**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 97-6007-CR-MORENO (s) |
| v. | ) | |
| | ) | |
| BEAUDOUIN KETANT | ) | 21 U.S.C. § 841(a)(1) |
|  a/k/a Jacques Ketant | ) | 21 U.S.C. § 846 |
|  a/k/a Jack Ketant | ) | 21 U.S.C. § 848 |
| a/k/a Jacques Beaudouin | ) | 21 U.S.C. § 853 |
|  a/k/a "Palmiste 2," | ) | 21 U.S.C. § 952(a) |
| FERNANDO BURGOS-MARTINEZ | ) | 21 U.S.C. § 963 |
|  a/k/a "Fernando," | ) | 18 U.S.C. § 924(c) |
| JOSEPH MICHEL FRANCOIS | ) | 18 U.S.C. § 1956(h) |
|  a/k/a "Michel" | ) | 18 U.S.C. § 2 |
|  a/k/a "Mapou," | ) | |
| MENARD SAUL | ) | |
|  a/k/a "Guyguy" | ) | |
|  a/k/a "The Blanc," | ) | |
| MARC VALME | ) | |
|  a/k/a "Palmiste," | ) | |
| FRITZ LAFONTANTE | ) | |
|  a/k/a "Guy," | ) | |
| PIERROT JOSEPH BEAUVAIS | ) | |
|  a/k/a Andre Beauvais | ) | |
|  a/k/a Joseph Beauvais | ) | |
|  a/k/a Pierrot Bauvais | ) | |
|  a/k/a Beauvais Joseph | ) | |
|  a/k/a "Peter," | ) | |
| GUY PLANTIN | ) | |
|  a/k/a Kenneth Bruce | ) | SUPERSEDING |
|  a/k/a "Kadafi," | ) | INDICTMENT |
| DERRICK VAUGHN MADDOX | ) | |
|  a/k/a "The Doctor," | ) | |
| FRANTZ CADET | ) | |
|  a/k/a "Zopope," | ) | |
| REGINALD MOLIN | ) | |
|  a/k/a "Reggie," | ) | |
| WILNER NOEL, | ) | |
| and | ) | |
| LUCKNER GUILLAUME | ) | |
|  a/k/a "Lucky," | ) | |
|                         Defendants. | ) | |

The Grand Jury charges that:

## COUNT I

Beginning in or about June of 1987, and continuing to in or about November of 1996, the exact dates being unknown to the Grand Jury, at Fort Lauderdale, Broward County, and at Miami, Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**BEAUDOUIN KETANT**
a/k/a Jacques Ketant
a/k/a Jack Ketant
a/k/a Jacques Beaudouin
a/k/a "Palmiste 2,"
**FERNANDO BURGOS-MARTINEZ**
a/k/a "Fernando,"
**JOSEPH MICHEL FRANCOIS**
a/k/a "Michel"
a/k/a "Mapou,"
**MENARD SAUL**
a/k/a "Guyguy"
a/k/a "The Blanc,"
**MARC VALME**
a/k/a "Palmiste,"
**FRITZ LAFONTANTE**
a/k/a "Guy,"
**PIERROT JOSEPH BEAUVAIS**
a/k/a Andre Beauvais
a/k/a Joseph Beauvais
a/k/a Pierrot Bauvais
a/k/a Beauvais Joseph
a/k/a "Peter,"
**GUY PLANTIN**
a/k/a Kenneth Bruce
a/k/a "Kadafi,"
**DERRICK VAUGHN MADDOX**
a/k/a "The Doctor,"
**FRANTZ CADET**
a/k/a "Zopope,"
**REGINALD MOLIN**
a/k/a "Reggie,"
**WILNER NOEL,**
and
**LUCKNER GUILLAUME**
a/k/a "Lucky,"

did knowingly and intentionally combine, conspire, confederate and agree with each other, and with persons known and unknown to the

Grand Jury, to import into the United States from a place outside thereof a Schedule II controlled substance, that is, a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 952(a).

## A.   OBJECT AND PURPOSE

It was the purpose and object of the conspiracy to establish a cocaine transportation and distribution network through the Republic of Haiti, employing in large part the political and military institutions of that country, and to use that network, among other means, to import and subsequently distribute thousands of kilograms of cocaine in the United States thereby reaping millions of dollars in illicit profits.

## B.   MANNER AND MEANS

Among the manner and means used to achieve the unlawful objectives of the conspiracy were the following:

1.   **FERNANDO BURGOS-MARTINEZ** and other Colombian narcotics traffickers, including Pablo Escobar-Gaviria, Jorge Luis Ochoa, Jairo Correra, Jose Gonzalo Rodriguez-Gacha and other co-conspirators known and unknown to the Grand Jury, arranged to utilize the presence of **FERNANDO BURGOS-MARTINEZ** in the Republic of Haiti to contact, corrupt, bribe and compromise the political and military government so as to allow the transhipment of vast quantities of cocaine from Colombia, Panama and Curacao through Haiti into the United States.

2.   **FERNANDO BURGOS-MARTINEZ, JOSEPH MICHEL FRANCOIS** and other co-conspirators known and unknown to the Grand Jury, caused

3

the building of an airstrip on the property of Haitian Colonel Jean Claude Paul in the Republic of Haiti to facilitate the landing and off-loading of cocaine-laden planes arriving from Colombia.

3.   Using this landing strip and the assistance of the corrupt political and military hierarchy in the Republic of Haiti, **FERNANDO BURGOS-MARTINEZ, JOSEPH MICHEL FRANCOIS, BEAUDOUIN KETANT** and other co-conspirators known and unknown to the Grand Jury, transhipped thousands of kilograms of cocaine through Haiti from Colombia and into the United States for distribution.

4.   As one of the de facto leaders of the Republic of Haiti, **JOSEPH MICHEL FRANCOIS** placed the political and military structure of the Republic of Haiti under his control, causing among other things, **MARC VALME** to become chief of the Port-au-Prince International Airport, and other co-conspirators to control the key maritime ports of St. Marc and Miraguane, to facilitate the smuggling of contraband through Haiti.

5.   Through the Port-au-Prince International Airport, and the Haitian ports of St. Marc and Miraguane, **FERNANDO BURGOS-MARTINEZ, JOSEPH MICHEL FRANCOIS, MARC VALME, BEAUDOUIN KETANT, FRITZ LAFONTANTE** and other co-conspirators known and unknown to the Grand Jury, smuggled thousands of kilograms of cocaine into the Republic of Haiti from Colombia, Panama and Curacao and then transported the cocaine into the United States utilizing couriers on commercial aircraft and vessels.

6.   **JOSEPH MICHEL FRANCOIS** demanded and extracted payments from persons smuggling cocaine into the United States and elsewhere

4

through the Republic of Haiti, its airports and seaports, as compensation for his ensuring safe passage of the contraband into and out of Haiti.

7.   **JOSEPH MICHEL FRANCOIS, MARC VALME** and other co-conspirators known and unknown to the Grand Jury, caused the "seizure" of hundreds of kilograms of cocaine which entered into the Republic of Haiti without any prior arrangement, agreement or bribe payment being made.  Those narcotics in turn were sold to **BEAUDOUIN KETANT, FRITZ LAFONTANTE** and other co-conspirators known and unknown to the Grand Jury, for delivery into the United States by couriers using commercial aircraft and vessels.

8.   To facilitate entry of the narcotics into the United States, **BEAUDOUIN KETANT, FRITZ LAFONTANTE** and other co-conspirators known and unknown to the Grand Jury corrupted and bribed key personnel at Miami International Airport, including Evens A. Gourgue, an employee of Metro-Dade County assigned to the airport, and other co-conspirators at Miami International Airport and John F. Kennedy International Airport, to cause them to help smugglers with cocaine-laden suitcases and body couriers escape detection and searches by United States Customs Service personnel as they entered into the United States from the Republic of Haiti aboard commercial aircraft.

9.   **BEAUDOUIN KETANT, FRITZ LAFONTANTE** and other co-conspirators known and unknown to the Grand Jury, organized a broad transportation and distribution network for their cocaine in many areas of the United States, including Fort Lauderdale, Miami, West

5

Palm Beach, New York and Chicago, and thereafter distributed the hundreds of kilograms of cocaine smuggled into the United States. **MENARD SAUL, PIERROT JOSEPH BEAUVAIS, GUY PLANTIN, DERRICK VAUGHN MADDOX, FRANTZ CADET, REGINALD MOLIN, WILNER NOEL, LUCKNER GUILLAUME,** Jean Toussaint and other co-conspirators known and unknown to the Grand Jury, were part of this transportation and distribution network.

10. **BEAUDOUIN KETANT, MENARD SAUL** and other co-conspirators known and unknown to the Grand Jury, would utilize the businesses of co-conspirators to launder their illegal profits from the drug trade and then **BEAUDOUIN KETANT, MENARD SAUL, FRITZ LAFONTANTE, PIERROT JOSEPH BEAUVAIS,** Jean Toussaint and other co-conspirators would smuggle the laundered currency out of the United States back into the Republic of Haiti. Evens A. Gourgue would similarly launder his narcotic trafficking profits by engaging in monetary and financial transactions involving the acquisition, sale and transfer of real estate and corporate assets with the proceeds of his illegal profits in efforts designed to conceal, disguise and hide the source of his ill-gotten gains.

C. **OVERT ACTS**

In furtherance of the conspiracy described herein, the defendants committed one or more of the following overt acts, among others, in the Southern District of Florida, and elsewhere:

1.   In or about June 1987, co-conspirators Pablo Escobar-Gaviria, Jorge Luis Ochoa, Jose Gonzalo Rodriguez-Gacha, Jairo Correra and other co-conspirators met and decided to pool their resources in opening a new narcotics route into the United States through the Republic of Haiti.

2.   In or about June 1987, co-conspirator Pablo Escobar-Gaviria instructed **FERNANDO BURGOS-MARTINEZ** to corrupt the then-existing military regime in Haiti to allow the transhipment of cocaine through the Republic of Haiti.

3.   In or about June 1987, **FERNANDO BURGOS-MARTINEZ** and other co-conspirators corrupted and bribed co-conspirator Jean Claude Paul, a Colonel in the Haitian military, to permit the safe landing and passage of cocaine-laden aircraft from Colombia into Haiti.

4.   On or about July 30, 1987, **FERNANDO BURGOS-MARTINEZ** and other co-conspirators imported from Haiti approximately two hundred (200) kilograms of cocaine into the United States through Miami International Airport.

5.   On or about September 17, 1987, **FERNANDO BURGOS-MARTINEZ, JOSEPH MICHEL FRANCOIS** and other co-conspirators imported from Haiti approximately thirty-three hundred (3,300) kilograms of cocaine into the United States through Miami International Airport.

6.   In or about late September 1987, **FERNANDO BURGOS-MARTINEZ, JOSEPH MICHEL FRANCOIS** and other co-conspirators caused to be imported from Colombia approximately one thousand (1,000) kilograms of cocaine into Haiti for ultimate distribution in the United States.

7.   In or about late September 1987, **FERNANDO BURGOS-MARTINEZ, JOSEPH MICHEL FRANCOIS** and other co-conspirators caused to be brought from Colombia a large sum of United States currency which was delivered directly to **JOSEPH MICHEL FRANCOIS**.

8.   In or about early October 1987, **FERNANDO BURGOS-MARTINEZ, JOSEPH MICHEL FRANCOIS** and other co-conspirators caused to be imported from Colombia approximately one thousand (1,000) kilograms of cocaine into Haiti for ultimate distribution in the United States.

9.   In or about early October 1987, **FERNANDO BURGOS-MARTINEZ, JOSEPH MICHEL FRANCOIS** and other co-conspirators caused to be paid to **JOSEPH MICHEL FRANCOIS**, as a representative of the Haitian military, millions of dollars in United States currency for the protection of their cocaine transhipments.

10.  In or about October 1987, **FERNANDO BURGOS-MARTINEZ** and other co-conspirators caused to be imported from Colombia approximately one thousand (1,000) kilograms of cocaine into Haiti for ultimate distribution in the United States.

11.  In or about 1989, **FERNANDO BURGOS-MARTINEZ** offered Haiti as a transhipment point to the Salomon Camacho narcotics organization centered in Barranquilla, Colombia.

12.  In or about 1989, **BEAUDOUIN KETANT** and other co-conspirators, including Mario Lazarre, engaged in the distribution of cocaine brought into Haiti by and through **FERNANDO BURGOS-MARTINEZ** and other co-conspirators, with the intent to transport and distribute that cocaine in the United States.

8

13.  In or about May 1991 **PIERROT JOSEPH BEAUVAIS** illegally entered the United States utilizing fraudulent documentation in the name of Andre Beauvais which he had previously obtained.

14.  In or about September 1991, **JOSEPH MICHEL FRANCOIS** and other co-conspirators caused a military takeover of the Republic of Haiti overthrowing the democratically elected leader, Jean Bertrand Aristide.

15.  Between in or about October 1991, and in or about December 1991, **JOSEPH MICHEL FRANCOIS** appointed Prosper Girend chief of the port of Miraguane, Haiti and Wilson Jeudy chief of the port of St. Marc, Haiti.

16.  Between in or about October 1991, and in or about January 1992, **JOSEPH MICHEL FRANCOIS** appointed **MARC VALME** chief of security for Port-au-Prince International Airport.

17.  In or about December 1991, **FERNANDO BURGOS-MARTINEZ** and **JOSEPH MICHEL FRANCOIS** met with other co-conspirators in Port-au-Prince, Haiti to discuss arrangements with Colombian narco-traffickers to utilize Haiti as a transhipment point for the importation of cocaine into the United States.

18.  In or about late 1991, **JOSEPH MICHEL FRANCOIS, BEAUDOUIN KETANT** and **FRITZ LAFONTANTE** met with each other in Port-au-Prince, Haiti to discuss the importation of cocaine into the United States from Haiti.

19.  In or about late 1991, **JOSEPH MICHEL FRANCOIS** accepted a payment of approximately $100,000 in United States currency from other co-conspirators, including Mario Lazarre, to permit the safe

passage of narcotics through Haiti as a transhipment point to the United States.

20. In or about December 1991, **JOSEPH MICHEL FRANCOIS** accepted a payment of between $300,000 and $500,000 in United States currency as a payoff for the successful transhipment of a large quantity of cocaine through Haiti.

21. In or about January 1992, **JOSEPH MICHEL FRANCOIS** and other co-conspirators, including Mario Lazarre, imported approximately three hundred (300) kilograms of cocaine into Haiti for ultimate distribution in the United States.

22. In or about January 1992, **JOSEPH MICHEL FRANCOIS** accepted a payment of approximately $700,000 in United States currency and a Toyota Land Cruiser automobile from co-conspirator Mario Lazarre as payment for the successful transhipment of approximately 300 kilograms of cocaine through Haiti for ultimate distribution in the United States.

23. In or about January 1992, **JOSEPH MICHEL FRANCOIS** and other co-conspirators arranged for the pickup of four (4) large boxes containing approximately four hundred (400) kilograms of cocaine at the port of Miraguane, Haiti and the transportation of said cocaine to Port-au-Prince, Haiti for ultimate distribution in the United States.

24. In or about January 1992, **JOSEPH MICHEL FRANCOIS** and **MARC VALME** arranged for the delivery of three (3) large suitcases containing approximately one hundred eighty (180) kilograms of

cocaine to the Port-au-Prince International Airport to be loaded onto commercial aircraft bound for Miami, Florida.

25. In or about April 1992, **FERNANDO BURGOS-MARTINEZ** and **JOSEPH MICHEL FRANCOIS** and other co-conspirators, including Mario Lazarre, arranged for the importation of between two thousand (2,000) and three thousand (3,000) kilograms of cocaine into Haiti, and the subsequent transportation of that cocaine to a stash house in Haiti for ultimate distribution in the United States.

26. On or about April 1, 1992, **FRITZ LAFONTANTE** and other co-conspirators imported a quantity of cocaine into the United States at Miami, Florida aboard the M/V SHIRLEY II.

27. Between in or about June 1992, and continuing through in or about April 1993, **JOSEPH MICHEL FRANCOIS** and another co-conspirator delivered in total over one hundred (100) kilograms of cocaine on several separate occasions to co-conspirator Leonard Pierre in Haiti for ultimate distribution in the United States.

28. On or about February 16, 1993, **PIERROT JOSEPH BEAUVAIS** obtained a fraudulent Florida driver's license in the name of Beauvais Joseph.

29. In or about March 1993, **JOSEPH MICHEL FRANCOIS, MARC VALME** and other co-conspirators caused several cocaine filled suitcases weighing approximately one hundred fifty (150) kilograms to be delivered to Port-au-Prince International Airport for placement on commercial aircraft destined for the United States.

30. On or about September 7, 1993, **JOSEPH MICHEL FRANCOIS** and co-conspirator Leonard Pierre attempted to import from Haiti

approximately twenty-five (25) kilograms of cocaine into the United States aboard the M/V SAINT PHILOMENE.

31.  On or about September 30, 1993, **MENARD SAUL** and other co-conspirators imported from Haiti approximately thirty (30) kilograms of cocaine aboard commercial aircraft into the United States through Miami International Airport.

32.  In or about December 1993, **MARC VALME** and other co-conspirators, including Marie Juni Jean, imported from Haiti a quantity of cocaine aboard commercial aircraft into the United States through Miami International Airport.

33.  On or about October 14, 1994, Evens A. Gourgue purchased with the proceeds of drug trafficking activity a residence located at 6610 N.W. 95 Lane, Parkland, Florida.

34.  From on or about June 6, 1995, and continuing through on or about August 7, 1995, Evens A. Gourgue and other co-conspirators, including Marie Juni Jean, imported from Haiti on several separate occasions multiple-kilogram quantities of cocaine aboard commercial aircraft into the United States through Miami International Airport.

35.  On or about August 14, 1995, other co-conspirators, including Marie Juni Jean and Ernst Solon, imported from Haiti approximately thirty (30) kilograms of cocaine aboard commercial aircraft into the United States through Miami International Airport.

36.  On or about August 15, 1995, other co-conspirators, including Sibylle Ketant and Yvrose Ketant Saul smuggled

approximately $50,000 worth of jewelry, representing the proceeds of narcotics trafficking activity, from Japan aboard commercial aircraft into the United States through Detroit, Michigan.

37.  On or about October 11, 1995, in Miami, Florida, **MENARD SAUL** and other co-conspirators, including Ulrick Plaisir, possessed approximately six (6) kilograms of cocaine.

38.  On or about November 15, 1995, other co-conspirators, including Maxeau Joseph, possessed approximately twenty-eight (28) kilograms of cocaine in Miami, Florida.

39.  On or about December 4, 1995, in the Southern District of Florida, **BEAUDOUIN KETANT, MENARD SAUL** and other co-conspirators, including Jean Ducarmel St. Vil and Elnide Marie Desravines, possessed a quantity of cocaine.

40.  Between on or about December 3, 1995, and on or about December 7, 1995, in Broward and Dade Counties, Florida, **BEAUDOUIN KETANT, MENARD SAUL, DERRICK VAUGHN MADDOX, REGINALD MOLIN** and other co-conspirators possessed a quantity of cocaine.

41.  On or about December 7, 1995, in Broward County, Florida, **MENARD SAUL** and **DERRICK VAUGHN MADDOX** possessed approximately $260,000 in United States currency representing narcotics proceeds.

42.  On or about December 7, 1995, in Broward County, Florida, **MENARD SAUL** possessed a firearm, to wit: a Glock Model 19, 9 mm semi-automatic pistol, in connection with **MENARD SAUL's** possession of narcotics proceeds.

43.  Between on or about December 18, 1995 and on or about December 21, 1995, **BEAUDOUIN KETANT, MENARD SAUL, REGINALD MOLIN,**

13

LUCKNER GUILLAUME and other co-conspirators, including Jean Toussaint, attempted to import from Haiti a quantity of cocaine into the United States through New York, New York.

44.  On or about January 10, 1996, GUY PLANTIN was in possession of a fraudulent Florida driver's license in the name of Kenneth Bruce.

45.  On or about January 16, 1996, in Broward County, Florida, BEAUDOUIN KETANT, MENARD SAUL, FRANTZ CADET, REGINALD MOLIN, LUCKNER GUILLAUME and other co-conspirators, including Jean Toussaint, possessed approximately fifty-nine and one-half (59.5) pounds of cocaine.

46.  On or about February 17, 1996, DERRICK VAUGHN MADDOX was in possession of a concealed firearm.

47.  Between on or about April 15, 1996 and on or about April 18, 1996, BEAUDOUIN KETANT, MENARD SAUL, REGINALD MOLIN, WILNER NOEL, LUCKNER GUILLAUME and other co-conspirators, including Jean Toussaint, imported from Haiti a quantity of cocaine into the United States through New York, New York.

48.  On or about April 18, 1996, at Chicago, Illinois, BEAUDOUIN KETANT, MENARD SAUL, REGINALD MOLIN, WILNER NOEL, LUCKNER GUILLAUME and other co-conspirators, including Jean Toussaint, possessed a quantity of cocaine.

49.  On or about May 8, 1996, in New York, New York, BEAUDOUIN KETANT and other co-conspirators possessed approximately nine (9) kilograms of cocaine.

50.   From on or about May 8, 1996, to on or about May 12, 1996, in Miami, Florida, **PIERROT JOSEPH BEAUVAIS** negotiated with an undercover Florida Department of Law Enforcement (FDLE) Special Agent the sale of one (1) kilogram of cocaine.

51.   On or about May 15, 1996, **BEAUDOUIN KETANT** fled from the Southern District of Florida to Haiti dressed in a disguise.

52.   On or about May 23, 1996, **FRITZ LAFONTANTE** and other co-conspirators, including Evens A. Gourgue, imported approximately fifty (50) kilograms of cocaine aboard commercial aircraft into the United States through Miami International Airport.

53.   On or about May 28, 1996, **FRITZ LAFONTANTE** and other co-conspirators possessed approximately $80,000 in United States Currency upon arrival aboard commercial aircraft in Curacao, Netherlands Antilles.

54.   On or about June 15, 1996, for the purpose of concealing the true ownership of a certain residence located at 1511 S.W. 87th Way, Pembroke Pines, Broward County, Florida, which he had purchased with the proceeds of his illegal narcotics trafficking activities, Evens A. Gourgue caused a quitclaim deed to be recorded which included Sandra Gourgue, Joel G. Audain, Cecil Aird and Lara Brown as title owners of said property.

55.   On or about October 26, 1996, **REGINALD MOLIN** attempted to purchase a quantity of cocaine.

All in violation of Title 21, United States Code, Section 963 and Title 18, United States Code, Section 2.

15

## COUNT II

Beginning in or about June of 1987, and continuing to in or about November of 1996, the exact dates being unknown to the Grand Jury, at Fort Lauderdale, Broward County, and at Miami, Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**BEAUDOUIN KETANT**
a/k/a Jacques Ketant
a/k/a Jack Ketant
a/k/a Jacques Beaudouin
a/k/a "Palmiste 2,"
**FERNANDO BURGOS-MARTINEZ**
a/k/a "Fernando,"
**JOSEPH MICHEL FRANCOIS**
a/k/a "Michel"
a/k/a "Mapou,"
**MENARD SAUL**
a/k/a "Guyguy"
a/k/a "The Blanc,"
**MARC VALME**
a/k/a "Palmiste,"
**FRITZ LAFONTANTE**
a/k/a "Guy,"
**PIERROT JOSEPH BEAUVAIS**
a/k/a Andre Beauvais
a/k/a Joseph Beauvais
a/k/a Pierrot Bauvais
a/k/a Beauvais Joseph
a/k/a "Peter,"
**GUY PLANTIN**
a/k/a Kenneth Bruce
a/k/a "Kadafi,"
**DERRICK VAUGHN MADDOX**
a/k/a "The Doctor,"
**FRANTZ CADET**
a/k/a "Zopope,"
**REGINALD MOLIN**
a/k/a "Reggie,"
**WILNER NOEL,**
and
**LUCKNER GUILLAUME**
a/k/a "Lucky,"

did knowingly and intentionally combine, conspire, confederate and agree with each other, and with persons known and unknown to the

16

Grand Jury, to possess with intent to distribute a Schedule II controlled substance, that is, a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(a)(1).

All in violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2.

## COUNT III

From on or about December 3, 1995, to on or about December 7, 1995, at Broward and Dade Counties, in the Southern District of Florida, and elsewhere, the defendants,

**BEAUDOUIN KETANT**
**a/k/a Jacques Ketant**
**a/k/a Jack Ketant**
**a/k/a Jacques Beaudouin**
**a/k/a "Palmiste 2,"**
**MENARD SAUL**
**a/k/a "Guyguy"**
**a/k/a "The Blanc,"**
**DERRICK VAUGHN MADDOX**
**a/k/a "The Doctor,"**
**and**
**REGINALD MOLIN**
**a/k/a "Reggie,"**

did knowingly and intentionally possess with intent to distribute a Schedule II controlled substance, that is, a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT IV

On or about December 7, 1995, at Broward County, in the Southern District of Florida, the defendant,

**MENARD SAUL**
**a/k/a "Guyguy"**

17

a/k/a "The Blanc,"

did knowingly carry a firearm, that is, a Glock Model 19, 9 mm semi-automatic pistol, during and in relation to a drug trafficking crime which is a felony prosecutable in a court of the United States; that is, a violation of Title 21, United States Code, Sections 841(a)(1), 846, 952 and 963.

All in violation of Title 18, United States Code, Section 924(c).

## COUNT V

On or about January 16, 1996, at Broward County, in the Southern District of Florida, and elsewhere, the defendants,

**BEAUDOUIN KETANT**
**a/k/a Jacques Ketant**
**a/k/a Jack Ketant**
**a/k/a Jacques Beaudouin**
**a/k/a "Palmiste 2,"**
**MENARD SAUL**
**a/k/a "Guyguy"**
**a/k/a "The Blanc,"**
**FRANTZ CADET**
**a/k/a "Zopope,"**
**REGINALD MOLIN**
**a/k/a "Reggie,"**
**and**
**LUCKNER GUILLAUME**
**a/k/a "Lucky,"**

did knowingly and intentionally possess with intent to distribute a Schedule II controlled substance, that is, a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT VI

1.    Beginning in or about 1989, and continuing to in or about November of 1996, the exact dates being unknown to the Grand Jury, at Broward County, and at Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**BEAUDOUIN KETANT**
a/k/a Jacques Ketant
a/k/a Jack Ketant
a/k/a Jacques Beaudouin
a/k/a "Palmiste 2,"
**FERNANDO BURGOS-MARTINEZ**
a/k/a "Fernando,"
**JOSEPH MICHEL FRANCOIS**
a/k/a "Michel"
a/k/a "Mapou,"
**MENARD SAUL**
a/k/a "Guyguy"
a/k/a "The Blanc,"
**FRITZ LAFONTANTE**
a/k/a "Guy,"
**PIERROT JOSEPH BEAUVAIS**
a/k/a Andre Beauvais
a/k/a Joseph Beauvais
a/k/a Pierrot Bauvais
a/k/a Beauvais Joseph
a/k/a "Peter,"
**GUY PLANTIN**
a/k/a Kenneth Bruce
a/k/a "Kadafi,"
**DERRICK VAUGHN MADDOX**
a/k/a "The Doctor,"
**FRANTZ CADET**
a/k/a "Zopope,"
**REGINALD MOLIN**
a/k/a "Reggie,"
**WILNER NOEL,**
and
**LUCKNER GUILLAUME**
a/k/a
"Lucky,"

did knowingly and willfully combine, conspire, confederate and agree with each other and with others known and unknown to the Grand Jury to launder monetary instruments and to engage in

19

monetary transactions in property derived from specified unlawful activity, that is:

a.   to knowingly and willfully conduct financial transactions affecting interstate and foreign commerce which involved the proceeds of a specified unlawful activity, that is, the receiving, concealment, buying, selling and otherwise dealing in narcotic and dangerous drugs punishable under the laws of the United States, intending to promote the carrying on of said specified unlawful activity and to conduct such financial transactions, knowing that the property involved in the financial transactions, that is, the funds and monetary instruments, represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

b.   to knowingly and willfully conduct financial transactions affecting interstate and foreign commerce which involved the proceeds of a specified unlawful activity, that is, the receiving, concealment, buying, selling and otherwise dealing in narcotic and dangerous drugs punishable under the laws of the United States, knowing that the transactions were designed in whole and in part to conceal the nature, location, source, ownership and control of the proceeds of said specified unlawful activity, and to conduct such financial transactions knowing that the property involved in the financial transactions, that is, funds and monetary instruments, represented the proceeds of some form of unlawful

activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

c.   to knowingly and willfully transport, transmit and transfer, and attempt to transport, transmit and transfer, funds from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States, intending to promote the carrying on of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

d.   to knowingly engage and attempt to engage in monetary transactions by, through, and to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is deposits, withdrawals, transfers and exchanges of United States currency, funds and monetary instruments, such property having been derived from a specified unlawful activity, that is, the receiving, concealment, buying, selling and otherwise dealing in narcotic and dangerous drugs punishable under the laws of the United States, in violation of Title 18, United States Code, Section 1957.

A.   **MANNER AND MEANS**

2.   The manner and means alleged in Count I are incorporated herein by reference.

3.   It was further a part of the conspiracy that the defendants would and did agree to transfer and accept United States currency that was generated by the unlawful sale of controlled substances, specifically including cocaine, illegally imported into

and sold in the United States, as payment for services, commissions and expenses of the drug trafficking organization.

4.   It was further a part of the conspiracy that the defendants would and did move large amounts of United States currency from Haiti to the United States.

5.   It was further a part of the conspiracy that the defendants would and did move large amounts of United States currency from the United States to Haiti.

6.   It was further a part of the conspiracy that the defendants would and did use portions of illegally derived funds to pay bribes to politicians, government officials and military officers in Haiti as a means by which to obtain favorable treatment for the illegal activities of the co-conspirators, to receive intelligence information, and to otherwise protect the co-conspirators in the conduct of their affairs.

**B.   OVERT ACTS**

7.   The overt acts alleged in paragraphs 12 through 55 of Count I, and paragraphs 1 through 5 in Count VII, are incorporated herein by reference.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT VII

Beginning in or about 1989, and continuing to in or about November of 1996, the exact dates being unknown to the Grand Jury, at Broward and Dade Counties, in the Southern District of Florida, and elsewhere, the defendant,

22

**BEAUDOUIN KETANT**
**a/k/a Jacques Ketant**
**a/k/a Jack Ketant**
**a/k/a Jacques Beaudouin**
**a/k/a "Palmiste 2,"**

did knowingly and intentionally engage in a continuing criminal enterprise in that he did violate Title 21, United States Code, Sections 841(a)(1), 846, 952(a) and 963, as alleged in the overt acts set forth in paragraphs 12-55 of Count I of this indictment, as further alleged at Counts II through VI of this indictment, which overt acts and counts are incorporated herein by reference, as well as further alleged at paragraphs 1-5 below, which violations were part of a continuing series of violations of said statutes undertaken by the defendant, **BEAUDOUIN KETANT**, in concert with at least five other persons, with respect to whom the defendant, **BEAUDOUIN KETANT**, occupied a position of organizer, supervisor and manager, from which continuing series of violations the defendant **BEAUDOUIN KETANT**, obtained substantial income and resources.

1.    From in or about 1989, and continuing through about 1991, **BEAUDOUIN KETANT, FRITZ LAFONTANTE, PIERROT JOSEPH BEAUVAIS, GUY PLANTIN,** and other co-conspirators known and unknown to the Grand Jury, including Evens A. Gourgue, engaged in the delivery of cocaine within Haiti for ultimate distribution in the United States.

2.    From in or about 1989, and continuing through about late 1991, **BEAUDOUIN KETANT, FRITZ LAFONTANTE, PIERROT JOSEPH BEAUVAIS**

and other co-conspirators caused large sums of currency to be smuggled out of the United States into Haiti.

3.      Between in or about 1989 and about late 1991, **BEAUDOUIN KETANT** caused co-conspirator Ronald Joubert to travel to the Republic of Panama, purchase in excess of one hundred twenty-five (125) kilograms of cocaine, return it to Haiti, repackage the cocaine, and transport it to **FRITZ LAFONTANTE** in the United States, who along with other co-conspirators were responsible for the distribution of the cocaine.

4.      From in or about 1989, and continuing through about 1991, **BEAUDOUIN KETANT, MENARD SAUL, FRITZ LAFONTANTE, PIERROT JOSEPH BEAUVAIS** and other co-conspirators known and unknown to the Grand Jury, corrupted and bribed Evens A. Gourgue and other co-conspirators to assist at the Miami International Airport and elsewhere in the importation of cocaine into the United States from Haiti.

5.      In or about 1991, **BEAUDOUIN KETANT** and **FRITZ LAFONTANTE** contracted with other co-conspirators, including Ronald Joubert, to obtain a quantity of cocaine possessed by other co-conspirators known and unknown to the Grand Jury who were assisting **BEAUDOUIN KETANT, FRITZ LAFONTANTE** and Evens A. Gourgue at the Miami International Airport.

All in violation of Title 21, United States Code, Section 848 and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATIONS

### FORFEITURE "1"

Upon his conviction for violations of Title 21, United States Code, Sections 841(a)(1), 846, 848 and 963, the defendant,

**BEAUDOUIN KETANT,**

shall forfeit to the United States:

Any and all property, real and personal, tangible and intangible, constituting or derived from any proceeds which the said defendant obtained directly or indirectly as a result of the said violation(s), and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violations alleged in Counts I, II, III, V and VII of the superseding indictment.

Upon his conviction for violation of Title 18, United States Code, Section 1956(h), the defendant,

**BEAUDOUIN KETANT,**

shall forfeit to the United States:

Any and all property, real and personal, tangible and intangible, involved in the aforestated offense in Count VI of the superseding indictment and all property traceable to such property.

Such forfeitures shall include all property described above, including but not limited to the following:

A.   $15,000,000.00 in United States currency and all interest and proceeds traceable thereto.

B.   All interest in Jess Travel and Tour Corp., EIN: #650482289.

C.   1993 Toyota Land Cruiser automobile, Florida Tag #TFV77Q; VIN: #JT3DJ81W5P0030755.

All in violation of Title 21, United States Code, Sections 841(a)(1), 846, 848, 853 and 963 and Title 18 United States Code, Sections 982 and 1956(h).

**FORFEITURE "2"**

Upon his conviction for violations of Title 21, United States Code, Sections 841(a)(1), 846 and 963, the defendant,

**MENARD SAUL,**

shall forfeit to the United States:

Any and all property, real and personal, tangible and intangible, constituting or derived from any proceeds which the said defendant obtained directly or indirectly as a result of the said violation(s), and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violations alleged in Counts I, II, III and V of the superseding indictment.

Upon his conviction for violation of Title 18, United States Code, Section 1956(h), the defendant,

**MENARD SAUL,**

shall forfeit to the United States:

Any and all property, real and personal, tangible and intangible, involved in the aforestated offense in Count VI of the superseding indictment and all property traceable to such property.

Such forfeitures shall include all property described above, including but not limited to the following:

26

A.    $1,500,000.00 in United States currency and all interest and proceeds traceable thereto.

B.    1996 Toyota Land Cruiser automobile, Florida Tag #F404B; VIN: #JT3HJ85J1T0117708.

All in violation of Title 21, United States Code, Sections 841(a)(1), 846, 853 and 963 and Title 18, United States Code, Sections 982 and 1956(h).

**FORFEITURE "3"**

Upon his conviction for violations of Title 21, United States Code, Sections 841(a)(1), 846 and 963, the defendant,

**DERRICK VAUHN MADDOX,**

shall forfeit to the United States:

Any and all property, real and personal, tangible and intangible, constituting or derived from any proceeds which the said defendant obtained directly or indirectly as a result of the said violation(s), and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violations alleged in Counts I, II, and III of the superseding indictment.

Upon his conviction for violation of Title 18, United States Code, Section 1956(h), the defendant,

**DERRICK VAUGHN MADDOX,**

shall forfeit to the United States:

Any and all property, real and personal, tangible and intangible, involved in the aforestated offense in Count VI of the superseding indictment and all property traceable to such property.

27

Such forfeitures shall include all property described above, including but not limited to the following:

A.    $400,000.00 in United States currency and all interest and proceeds traceable thereto.

B.    1995 Land Rover automobile, Florida Tag #LLN259; VIN: #SALPV1246SA316174.

C.    1996 Mercedes Benz automobile, Florida Tag #LHU779; VIN: #WDBFA63F3TF138612.

D.    1994 Jeep Cherokee automobile, Florida Tag #LPF60G; VIN: #1J4GZ78Y0RC117123.

E.    1994 Mercedes Benz automobile, Florida Tag #QBZ23I; VIN: #WDBEA52E9RC013378.

F.    All interest in Fresh Cut Unisex Barber Salon, Inc., EIN: 650528007.

G.    All that lot or parcel of land, together with its buildings, improvements, fixtures, attachments and easements, located at 1821 SW 133 Terrace, Miramar, Broward County, Florida, more particularly described as Lot 23, Block 13 of FLAMINGO ESTATES, according to the Plat thereof, recorded at Plat Book 150, Page 6 of the Public Records of Broward County, Florida.

All in violation of Title 21, United States Code, Sections 841(a)(1), 846, 853 and 963 and Title 18, United States Code, Sections 982 and 1956(h).

## FORFEITURE "4"

Upon his conviction for violations of Title 21, United States Code, Sections 841(a)(1), 846 and 963, the defendant,

**FRANTZ CADET,**

shall forfeit to the United States:

Any and all property, real and personal, tangible and intangible, constituting or derived from any proceeds which the said defendant obtained directly or indirectly as a result of the said violation(s), and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violations alleged in Counts I, II and V of the superseding indictment.

Upon his conviction for violation of Title 18, United States Code, Section 1956(h), the defendant,

**FRANTZ CADET,**

shall forfeit to the United States:

Any and all property, real and personal, tangible and intangible, involved in the aforestated offense in Count VI of the superseding indictment and all property traceable to such property.

Such forfeitures shall include all property described above, including but not limited to the following:

    A.   $1,700,000.00 in United States currency and all interest and proceeds traceable thereto.

    B.   All right, title, and interest in the Motor Vessel (M/V) BLACK EAGLE.

All in violation of Title 21, United States Code, Sections 841(a)(1), 846, 853 and 963 and Title 18, United States Code, Sections 982 and 1956(h).

**FORFEITURE "5"**

    1.    Upon his conviction for violations of Title 21, United States Code, Sections 841(a)(1), 846 and 963, the defendant,

**REGINALD MOLIN,**

shall forfeit to the United States:

    Any and all property, real and personal, tangible and intangible, constituting or derived from any proceeds which the said defendant obtained directly or indirectly as a result of the said violation(s), and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violations alleged in Counts I, II, III and V of the superseding indictment.

    Upon his conviction for violation of Title 18, United States Code, Section 1956(h), the defendant,

**REGINALD MOLIN,**

shall forfeit to the United States:

    Any and all property, real and personal, tangible and intangible, involved in the aforestated offense in Count VI of the superseding indictment and all property traceable to such property.

    Such forfeitures shall include all property described above, including but not limited to the following:

    A.    $1,400,000.00 in United States currency and all interest and proceeds traceable thereto.

30

All in violation of Title 21, United States Code, Sections 841(a)(1), 846, 853 and 963 and Title 18, United States Code, Sections 982 and 1956(h).

### FORFEITURE OF SUBSTITUTE ASSETS

If any of the forfeitable property described in the forfeiture section of this Indictment, as a result of any act or omission of the defendants,

    (a)   cannot be located upon the exercise of due diligence;

    (b)   has been transferred or sold to, or deposited with, a third person;

    (c)   has been placed beyond the jurisdiction of the Court;

    (d)   has been substantially diminished in value; or

    (e)   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 18, United States Code, Section 982(b)(1)(A), to seek forfeiture of any other property of said defendants up to the value of the above property.

By virtue of the commission of one or more of the felony offenses charged in this Indictment by the defendants, any and all interest of the defendants in the above-described property is

vested in the United States and hereby forfeited to the United States pursuant to Title 21, United States Code, Section 853(p), and Title 18, United States Code, Section 982(b)(1)(A).

A TRUE BILL

FOREPERSON

THOMAS E. SCOTT
UNITED STATES ATTORNEY

JOHN S. KASTRENAKES
ASSISTANT UNITED STATES ATTORNEY

32

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA**

v.

**BEAUDOUIN KETANT, et al.**

**CASE NO:** 97-6007-Cr-Moreno(s)

**CERTIFICATE OF TRIAL ATTORNEY**

**Related Case Information:**
SUPERSEDING          Yes __X__   No __X__
New Defendant(s)     Yes __X__   No ____
Number of New Defendants    2
Total number of counts      7

**Court Division:** (Select One)

| | | | |
|---|---|---|---|
| ____ Miami | ____ Key West | | |
| XX FTL | ____ WPB | ____ FTP | |

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:      (Yes or No) __YES__
   List language and/or dialect __CREOLE__

4. This case will take __40__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)                                    (Check only one)

   | | | | | |
   |---|---|---|---|---|
   | I | 0 to 5 days | ____ | Petty | |
   | II | 6 to 10 days | ____ | Minor | |
   | III | 11 to 20 days | ____ | Misdem. | |
   | IV | 21 to 60 days | __X__ | Felony | __X__ |
   | V | 61 days and over | ____ | | |

6. Has this case been previously filed in this District Court? (Yes or No) __YES__
   If yes:
   Judge: __Moreno__          Case No: __97-6007__
   (enclose copy of dispositive order)

   Has a complaint been filed in this matter? (Yes or No) _____
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____   District of _____

7. This case originated in the U.S. Attorney's office prior to August 16, 1985
   (Yes or No) __NO__

JOHN KASTRENAKES
ASSISTANT UNITED STATES ATTORNEY
BAR NO. 312827

N:\UDD\KGOLAND\CERTRIAL.FRM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: BEAUDOUIN KETANT   Case No. 97-6007-Cr-MORENO(s)
a/k/a Jacques Ketant, Jack Ketant, Jacques Beaubrun, Jacques Aurelus

Count #: I

Conspiracy to Import Narcotics

Title 21, United States Code, Section 963

*Max. Penalty: 10 Years to Life

========================================================================

Count #: II

Conspiracy to Possess Cocaine With Intent to Distribute

Title 21, United States Code, Section 846

*Max. Penalty:   10 Years to Life

========================================================================

Count #: III

Possession With Intent to Distribute Cocaine

Title 21, United States Code, Section 841(a)(1)

*Max. Penalty: 10 Years to Life

========================================================================

Count #:  V

Possession with Intent to Distribute Cocaine

Title 21, United States Code, Section 841(a)(1)

*Max. Penalty: 10 Years to Life

========================================================================

Count #:  VI

Conspiracy to Launder Monetary Instruments

Title 18, United States Code, Section 1956(h)

*Max. Penalty: 20 Years

========================================================================

*Refers only to possible term of incarceration, does not
include possible fines, restitution, special assessments,
parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: BEAUDOUIN KETANT   Case No. 97-6007-Cr-MORENO(s)
(cont'd)

Count #: VII

    Continuing Criminal Enterprise

Title 21, United States Code, Section 848

*Max. Penalty: Life
=================================================================

Count #:

_____

*Max. Penalty:
=================================================================

Count #:

_____

_____

=================================================================

Count #:

_____

_____

*Max. Penalty:
=================================================================

Count #:

_____

_____

*Max. Penalty:

*Refers only to possible term of incarceration, does not include
possible fines, restitution, special assessments, parole terms, or
forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: FERNANDO BURGOS-MARTINEZ   CASE No.   97-6007-Cr-
a/k/a "Fernando"                              MORENO(s)

Count #: I

_____Conspiracy to Import Narcotics

Title 21, United States Code, Section 963

*Max. Penalty: 10 Years to Life

Count #: II

_____Conspiracy to Possess Cocaine With Intent to Distribute

Title 21, United States Code, Section 846

*Max. Penalty:   10 Years to Life

Count #:  VI

_____Conspiracy to Launder Monetary Instruments

Title 18, United States Code, Section 1056(h)

*Max. Penalty: 20 Years

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

    *Refers only to possible term of incarceration, does not
include possible fines, restitution, special assessments,
parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: JOSPEH MICHEL FRANCOIS CASE No. 97-6007-Cr-
a/k/a "Fernando" ,"Tennis", Mapuoou"
MORENO(s)

Count #: I

Conspiracy to Import Narcotics

Title 21, United States Code, Section 963

*Max. Penalty: 10 Years to Life

================================================================

Count #: II

Conspiracy to Possess Cocaine With Intent to Distribute

Title 21, United States Code, Section 846

*Max. Penalty:   10 Years to Life

================================================================

Count #:  VI

Conspiracy to Launder Monetary Instruments

Title 18, United States Code, Section 1056(h)

*Max. Penalty: 20 Years

================================================================

Count #:


*Max. Penalty:

================================================================

Count #:


*Max. Penalty:

================================================================

*Refers only to possible term of incarceration, does not
include possible fines, restitution, special assessments,

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: MENARD SAUL    Case No. 97-6007-Cr-MORENO(s)
Count #: I            a/k/a "Guyguy"

Conspiracy to Import Narcotics

Title 21, United States Code, Section 963

*Max. Penalty: 10 Years to Life

Count #: II

Conspiracy to Possess Cocaine With Intent to Distribute

Title 21, United States Code, Section 846

*Max. Penalty:    10 Years to Life

Count #: III

Possession With Intent to Distribute Cocaine

Title 21, United States Code, Section 841(a)(1)

*Max. Penalty: 10 Years to Life

Count #: V

Possession with Intent to Distribute Cocaine

Title 21, United States Code, Section 841(a)(1)

*Max. Penalty: 10 Years to Life

Count #: VI

Conspiracy to Launder Monetary Instruments

Title 18, United States Code, Section 1956(h)

*Max. Penalty: 20 Years

*Refers only to possible term of incarceration, does not
include possible fines, restitution, special assessments,
parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: MARC VALME     Case No. 97-6007-Cr-MORENO(s)
        a/k/a "Palmis"

Count #: I

        Conspiracy to Import Narcotics

Title 21, United States Code, Section 963

*Max. Penalty: 10 Years to Life

Count #: II

        Conspiracy to Possess Cocaine With Intent to Distribute

Title 21, United States Code, Section 846

*Max. Penalty:   10 Years to Life

Count #:


*Max. Penalty:

Count #:


*Max. Penalty:

Count #:


*Max. Penalty:

        *Refers only to possible term of incarceration, does not
        include possible fines, restitution, special assessments,
        parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: FRITZ LAFONTANTE     Case No. 97-6007-Cr-MORENO(s)
        a/k/a "Guy"

Count #: I

_____ Conspiracy to Import Narcotics

Title 21, United States Code, Section 963

*Max. Penalty: 10 Years to Life
=================================================================
Count #: II

_____ Conspiracy to Possess Cocaine With Intent to Distribute

Title 21, United States Code, Section 846

*Max. Penalty:   10 Years to Life
=================================================================
Count #:  VI

_____ Conspiracy to Launder Monetary Instruments

Title 18, United States Code, Section 1956(h)

*Max. Penalty: 20 years
=================================================================
Count #:



_____

*Max. Penalty:
=================================================================
Count #:



_____

*Max. Penalty:
=================================================================
      *Refers only to possible term of incarceration, does not
      include possible fines, restitution, special assessments,
      parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: PERROT BAUVAIS    Case No. 97-6007-Cr-MORENO(s)
       a/k/a Beavais, a/k/a "Peter"

Count #: I

_____
      Conspiracy to Import Narcotics

Title 21, United States Code, Section 963

_____
*Max. Penalty: 10 Years to Life
===============================================
Count #: II
_____
      Conspiracy to Possess Cocaine With Intent to Distribute

Title 21, United States Code, Section 846

_____
*Max. Penalty:   10 Years to Life
===============================================
Count #:  VI
_____
      Conspiracy to Launder Monetary Instruments

Title 18, United States Code, Section 1956(h)

*Max. Penalty: 20 years
===============================================
Count #:
_____

_____

*Max. Penalty:
===============================================
Count #:
_____

_____

*Max. Penalty:
===============================================
      *Refers only to possible term of incarceration, does not
      include possible fines, restitution, special assessments,
      parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: GUY PLANTIN    Case No. 97-6007-Cr-MORENO(s)
      a/k/a "Kadafi"

Count #: I

___Conspiracy to Import Narcotics___

Title 21, United States Code, Section 963

*Max. Penalty: 10 Years to Life

Count #: II

___Conspiracy to Possess Cocaine With Intent to Distribute___

Title 21, United States Code, Section 846

*Max. Penalty:   10 Years to Life

Count #:  VI

___Conspiracy to Launder Monetary Instruments___

Title 18, United States Code, Section 1956(h)

*Max. Penalty: 20 years

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

      *Refers only to possible term of incarceration, does not
   include possible fines, restitution, special assessments,
   parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: DERRICK VAUGHN MADDOX CASE No. 97-6007-Cr-
a/k/a "The Doctor" MORENO(s)

Count #: I

Conspiracy to Import Narcotics

Title 21, United States Code, Section 963

*Max. Penalty: 10 Years to Life

========================================================

Count #: II

Conspiracy to Possess Cocaine With Intent to Distribute

Title 21, United States Code, Section 846

*Max. Penalty: 10 Years to Life

========================================================

Count #: III

Possession With Intent to Distribute Cocaine

Title 21, United States Code, Section 841(a)(1)

*Max. Penalty: 10 years to Life

========================================================

Count #: VI

Conspiracy to Launder Monetary Instruments

Title 18, United States Code, 1956 (h)

*Max. Penalty: 20 Years

========================================================

Count #:

*Max. Penalty:
========================================================

*Refers only to possible term of incarceration, does not

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: FRANTZ CADET        CASE NO. __97-6007-CR-MORENO(s)__
                  a/k/a "Zopope"

Count #: I
_____

Conspiracy to import Narcotics

Title 21, United States Code, Section 963
_____

*Max. Penalty:   Ten years to Life
=======================================================

Count #: II
_____

Conspiracy to Possess With Intent to Distribute Cocaine

Title 21 United States Code, Section 846
_____

*Max. Penalty: 10 years to Life
=======================================================

Count # V
_____

Possession with Intent to Distribute Cocaine

Title 21, United States Code, Section 841(a)(1)
_____

*Max. Penalty: 10 Years to Life
=======================================================

Count #: VI
_____

Conspiracy to Launder Monetary Instruments

Title 18, United States Code, Section 1956(h)
_____

*Max. Penalty: 20 Years
=======================================================

Count #:
_____

_____

*Max. Penalty:
_____

*Refers only to possible term of incarceration, does not
include possible fines, restitution, special assessments, parole
terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: REGINALD MOLIN          Case No. 97-6007-Cr-MORENO(s)
Count #: I            a/k/a "Reggie"

Conspiracy to Import Narcotics

Title 21, United States Code, Section 963

*Max. Penalty: 10 Years to Life

===================================================================

Count #: II

Conspiracy to Possess Cocaine With Intent to Distribute

Title 21, United States Code, Section 846

*Max. Penalty:  10 Years to Life

===================================================================

Count #: III

Possession With Intent to Distribute Cocaine

Title 21, United States Code, Section 841(a)(1)

*Max. Penalty: 10 Years to Life

===================================================================

Count #:  V

Possession with Intent to Distribute Cocaine

Title 21, United States Code, Section 841(a)(1)

*Max. Penalty: 10 Years to Life

===================================================================

Count #:  VI

Conspiracy to Launder Monetary Instruments

Title 18, United States Code, Section 1956(h)

*Max. Penalty: 20 Years

===================================================================

    *Refers only to possible term of incarceration, does not
include possible fines, restitution, special assessments,
parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: WILNER NOEL      CASE NO.  97-6007-CR-MORENO(s)

Count #: I

Conspiracy to import Narcotics

Title 21, United States Code, Section 963

*Max. Penalty:   Ten years to Life
=====================================================================
Count #: II

Conspiracy to Possess With Intent to Distribute

Title 21 United States Code, Section 846

*Max. Penalty: 10 years to Life
=====================================================================
Count # VI

Conspiracy to Launder Monetary Instruments

Title 18, United States Code, Section 1956(h)

*Max. Penalty: 20 Years
=====================================================================
Count #:



*Max. Penalty:
=====================================================================
Count #:



*Max. Penalty:

*Refers only to possible term of incarceration, does not
include possible fines, restitution, special assessments, parole
terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: LUCKNER GUILLAUME   CASE NO. 97-6007-Cr-MORENO(s)

Count #: I

Conspiracy to Import Narcotics

Title 21, United State Code, Section 963

*Max. Penalty:   Ten Years to Life

Count #:  II

Conspiracy to Possess with Intent to Distribute Cocaine

Title 21 United States Code, Section 846

*Max. Penalty: 10 Years to Life

Count #: V

Possession with Intent to Distribute Cocaine

Title 21, United States Code, Section 841(a)(1)

*Max. Penalty: 10 Years to Life

Count #: VI

Conspiracy to Launder Monetary Instruments

Title 18, United States Code, Section 1956(h)

*Max. Penalty: 20 Years

Count #:

*Max. Penalty:

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

No. __97-6007-Cr-Moreno(s)

# UNITED STATES DISTRICT COURT

SOUTHERN _____ District _of_ FLORIDA

_____ CRIMINAL _____ Division

## THE UNITED STATES OF AMERICA

vs.

BEAUDOUIN KETANT, et al.

# INDICTMENT

IN VIOLATION OF:

```
21 USC 841(a)(1), 21 USC 952(a)
21 USC 846            21 USC 963
21 USC 848            18 USC 924(c)
21 USC 853            18 USC 1956(h)
                      18 USC 2
```

_A true bill._

_Foreman._

_Filed in open court this _____ day,_

_of _____ A.D. 19 _____._

_Clerk_

_Bail, $ _____._

REC'D DKTG _____ D.C.

ᴊᴀɴ 18 1998

CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA., MIAMI